Maurice E. JENKINS et al., Plaintiffs-Appellants,

v.

Walter ANDREWS et al., Defendants-Respondents.

No. KCD 27197.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

Richard N. Brown, Brown & Casey, Brookfield, for plaintiffs-appellants.

Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, Cleaveland & Macoubrie, Chillicothe, for defendants-respondents.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action for damages arising out of claimed abuse of process. In each of three counts, plaintiffs sought punitive damages of $5,000,000 and actual damages of $1,100 on Count I, $100,000 on Count II and $5,000 on Count III. This appeal is from order of trial court dismissing the petition with prejudice.

The plaintiffs in this case are Maurice E. Jenkins, his wife, Hazel, and their son, Phillip. The defendants are the members of the board of directors of Chariton County Grain Company, Incorporated, at the time of its liquidation in September, 1964.

On December 18, 1965, the Carroll County Circuit Court entered judgment against Maurice E. Jenkins for $6,840.07, in favor of Chariton County Grain Company, Incorporated.

Execution issued on the judgment and on August 5, 1966, an effort was made to levy on personal property on the farm owned and operated by Maurice Jenkins and his wife in Chariton County. Actions of the defendants in connection with this effort form the basis for Count I of the petition in

this case. The attempted levy on the personal property was unsuccessful.

On October 5, 1966, the defendants served upon Jenkins notice to the effect that they would enforce their judgment by levying upon real estate owned by Jenkins and situated in Linn County. Execution sale was held on November 7, 1966, and defendant Robert Madget purchased the interest of Maurice Jenkins for $500. Madget thereafter brought suit against defendants here to quiet his title therein and was successful, with the court setting aside two deeds as having been made with intent to defraud creditors. The judgment of the trial court was affirmed by the Supreme Court in *Madget v. Jenkins,* 461 S.W.2d 768 (Mo. 1970). The acts of the defendants relating to this procedure are involved in Count II of defendants' petition.

In July, 1965, plaintiffs Maurice and Hazel Jenkins borrowed $65,000 from Phoenix Mutual Life Insurance Company. They executed a single note for the indebtedness, secured by a deed of trust on their Linn and Chariton County farms. In March, 1970, the defendants, other than Madget, purchased the note. On April 15, 1970, the purchasers of the note notified plaintiffs that their failure to pay taxes on the Linn County property for 1967, 1968 and 1969 constituted a default under the deed of trust and demanded payment of the amount due on the note. Both the Chariton and Linn County farms were advertised for sale under the deed of trust securing the note. Plaintiffs filed suit in the Linn County Circuit Court for a declaratory judgment and injunction against the sale. After the decision in *Madget v. Jenkins,* supra, in the Supreme Court, judgment was entered denying plaintiffs relief. The action of the defendants relating to the enforcement of the deed of trust forms the basis for Count III of the petition.

The present action was begun in the Linn County Circuit Court July 29, 1971. Defendant Madget filed a separate motion to dismiss. The other defendants filed a joint motion. These motions were overruled

February 22, 1972. Defendant Madget filed a separate answer. The remaining defendants filed a joint answer.

On October 10, 1972, one of the defendants filed an affidavit for disqualification of Judge Green of the Linn County Circuit Court. The application was sustained and Judge J. Morgan Donelson was assigned to hear this case.

On December 14, 1973, the defendants filed an amended motion for summary judgment or in the alternative to dismiss plaintiffs' petition. On December 21, 1973, a hearing on the motion was held before Judge Donelson. At the conclusion of the presentation of the motion and argument of counsel, the trial court indicated its intention to overrule the motion for summary judgment, but to sustain the motion to dismiss unless an amended petition was filed. Counsel for plaintiffs asked leave to amend and the trial court granted 30 days for such purpose.

On January 18, 1974, plaintiffs filed application for a change of judge. Defendants objected to the application and the cause was again taken up by Judge Donelson on January 28, 1974. Following argument, he entered an order overruling the motion for summary judgment, but sustaining the motion to dismiss and dismissed the petition, with prejudice. Then, he sustained plaintiffs' application for change of judge. This appeal followed.

In this court the first assignment of error is based upon the trial judge's failure to disqualify himself prior to ruling on the defendants' motion to dismiss. Appellants contend that the application for disqualification met the requirements of Rule 51.05, V.A.M.R., and that the application was timely, so that nothing remained for the judge to do but to take the steps necessary to substitute another judge. Respondents contend that the application was not timely insofar as their motion to dismiss was concerned because it was filed after the matter had been heard and while the court had it under advisement.

Appellants rely upon paragraph (b) of Rule 51.05, as follows:

"(b) The application must be filed at least thirty days before the trial date or within five days after a trial setting date has been made, whichever date is later, unless the trial judge has not been designated within that time, in which event the application may be filed within ten days after the trial judge has been designated or at any time prior to trial, whichever date is earlier."

Appellants apparently assume that their motion was within the literal limits of the rule, inasmuch as they have filed no reply to respondents' argument on that issue.

■ It has long been settled in this state that the right to disqualify a judge is not to be employed "to produce inconvenience and absurdity." In *Ex Parte Cox,* 10 Mo. 742 (1847), issues in a divorce action had been tried by a jury and after their verdict, the defendant applied for a change of venue on grounds of prejudice of the judge. In ordering the trial court, by mandamus, to proceed with the cause, the Supreme Court stated (10 Mo. 743):

"Our statute which authorizes a change of venue in civil cases does not in terms declare at what period of the cause such orders may be made. There can be no doubt, however, that it never was contemplated that the progress of a suit could be interrupted at any period by such applications. The law must be construed with reference to the practice of other courts and our courts, so as not to produce inconvenience and absurdity. We need not, in this case, undertake to fix any particular period, beyond which such applications should be disregarded but we do not hesitate to say that, after the issues have been made up and tried, it is too late for complainant to come in and swear that the judge is prejudiced. No special facts are stated to account for this untimely application. If any prejudice existed on the part of the judge, it must have existed before the suit was tried. Is a party to lie by until near the close of a trial, and when the developments elicited in its progress have induced a belief that the result will be unfavorable, to be then permitted to abandon the tribunal he has himself selected, and try the chances of some other jurisdiction? Such a course would tend to endless litigation. We will not presume that such a proceeding was designed to be tolerated, unless the Legislature shall expressly say so."

That ruling was followed in *Woodrow v. Younger,* 61 Mo. 395 (1875). In that case, a referee had been appointed and had made his report and exceptions to it had been filed. Before the court could act on the report and exceptions, the defendant applied for a change of venue for prejudice of the judge. The trial court refused the application and its ruling was held not error, the court relying on *Ex Parte Cox,* supra. The court stated (61 Mo. 397):

" * * * It is clear that the change of venue asked, if granted, would have involved the necessity of another reference, and, consequently, the introduction of new evidence, and so in this way virtually allowed a new trial, without regard to the results of the first investigation or the opinion of the court upon it, and thus suits could be indefinitely protracted."

See *State ex rel. Darling and Company v. Billings,* 435 S.W.2d 377 (Mo. banc 1968) distinguishing *Woodrow v. Younger* in a case where application to disqualify the judge was held timely when made after appointment of a referee but before the referee had undertaken to hear the matter.

In *State ex rel. Reeder, et al. v. Foard,* 268 Mo. 300, 188 S.W. 71 (banc 1916), the court held that the organization of a drainage district, including the hearing of exceptions to commissioners' report, was a single proceeding and that an attempted disqualification of the judge after the decree of incorporation and filing of commissioners' report and exceptions thereto was untimely. In so holding the court stated (188 S.W. 74):

"It would be a hazardous doctrine to say that, after a judge had partially heard a case, a party thereto could stop that hearing by procuring a change of venue upon the ground of prejudice of the judge, then actually trying the case."

In *Browder v. Milla,* 296 S.W.2d 502 (Mo. App.1956), the court in a court-tried case refused to give literal application to the provision of § 508.120, RSMo 1949, V.A. M.S., requiring filing of a request for change of venue within five days after knowledge of the existence of the cause therefor comes to a party's attention, when the motion for change of venue for prejudice of the judge was filed during a four-day recess, after evidence had been heard.

■ None of these cases involved the present situation and the current Rule 51.05 has been in effect only since September 1, 1973 and has not been previously considered in this regard. However, these prior cases are important for their recognition that something other than the literal language of a statute or rule governing disqualification of a judge may be considered in determining whether or not an application for such purpose is timely.

■ In this case, the motion for summary judgment and to dismiss had been taken up by the court. Evidentiary material, in the form of transcript of other causes and depositions, had been submitted in connection with the motion for summary judgment. The motion had been fully argued by both sides. Counsel for appellants apparently acquiesced in the court's suggestion that amendment of the petition would be required. Counsel requested 30 days time for such action which was granted and the motion of defendants was continued. To permit appellants to disqualify the judge, rather than to file their amended petition, would nullify the hearing which had been held, result in a duplication of the proceeding already undertaken and permit appellants to take advantage of a tentative expression of opinion by the trial judge on the matter submitted to avoid his action upon

it. Such result is not required by Rule 51.05. Under the cases above cited, the action of the trial court in ruling on the motion previously submitted before acting on the disqualification was not error.

Turning to the contention that the trial court erred in sustaining defendants' motion to dismiss, the amended petition before the court read as follows:

"Come now Plaintiffs, by their attorneys, and for their cause of action allege:

"1. Defendants Walter Andrews, B. W. Andrews, Ralph Welsh, Everett Welsh, and Robert Madget are five of the six partners who operated a business known as the Chariton County Grain Company, which business was incorporated under the same name on the 2nd day of April, 1959.

"2. On or about the 3rd day of September, 1964, the said Chariton County Grain Company was liquidated, the Defendants being the shareholders of said corporation at that time.

"3. Pursuant to proceedings in the case of *Chariton County Grain Company, Incorporated vs. Maurice E. Jenkins and Hazel Jenkins,* husband and wife, Case No. 7303 in the Circuit Court of Carroll County, Missouri, the Court entered its judgment therein on the 18th day of December, 1965, finding that the Plaintiff corporation was to have and recover of the Defendant Maurice E. (Jack) Jenkins the sum of $6,840.07, with interest at the rate of six (6%) per cent per annum from the 1st day of March, 1960, until paid and the costs incurred therein.

"COUNT I

"4. On or about the 5th day of August, 1966, Defendant Robert Madget together with other agents of said Defendants appeared at the farm then owned and operated by Plaintiffs Maurice E. Jenkins and Hazel I. Jenkins, his wife, in Chariton County, Missouri, and:

"a. The said Robert Madget and the said agents then and there and upon the Plain-

tiff's Linn County farm, attempted to levy upon the personal property found upon said farms, without regard to ownership and without regard to demand for bond properly made by third-party claimants to said property; and

"b. Trespassed upon the property of Plaintiffs Maurice E. Jenkins and Hazel I. Jenkins, his wife, leaving open gates and stampeding the stock then belonging to Plaintiff Hazel Jenkins, causing:

"(1) A black sow of the reasonable value of $100.00 to become overheated and die therefrom; and

"(2) Gates to remain open and allowing cattle in the pasture upon said Linn County farm to enter into and upon beans in another field thereof belonging to Plaintiff Phillip Jenkins, trampling and destroying the same to the damage of approximately $500.00.

"WHEREFORE, Defendants and their agents having wrongfully abused the process to which they were entitled, Plaintiffs pray for judgment in amount of $100.00 for the reasonable value of the hog destroyed by Defendants' wrongful acts, for $1,000.00 damages in accordance with Section 537.350 RSMo (1969), for punitive damages in amount of $5,000,000, and for their costs expended herein.

## "COUNT II

"5. On or about the 5th day of October, 1966, Defendants and their agents caused to be served upon Maurice E. (Jack) Jenkins a notice to the effect that they were levying and would sell on the 7th day of November, 1966, real estate belonging to him and situated in Linn County, Missouri, purportedly by execution upon the judgment of Chariton County Grain Company, Incorporated, in the said Case No. 7303 in the Circuit Court of Carroll County, Missouri, and:

"a. Although authorized by law, said sale and the events subsequent thereto were conducted with the intent of denying Plaintiff Maurice E. Jenkins access to and use of any of his properties, real, personal or mixed, as collateral upon which to raise the moneys to pay said judgment, although a suit to clarify the title to the land upon which they sought to levy could have been conducted prior to levy so as not to cast a cloud upon all assets available to the said Maurice E. Jenkins and make it impossible for him to consider either satisfaction or compromise of said judgment; and

"b. On the said 7th day of November, 1966, Defendant Robert Madget purchased the right, title and interest of Maurice E. Jenkins in said Linn County lands, consisting of approximately 400 acres, for a total price of $500.00 at a sale conducted under said levy and execution; and, upon receipt of the Sheriff's Deed thereto, the said Robert Madget immediately filed a suit to quiet his title therein, alleging that the interests of everyone except the said Maurice E. Jenkins were established by fraudulent conveyances. Said suit continued to tie up the entire property interests of said Maurice E. Jenkins and the remaining Plaintiffs as the lands in question were security, together with all other lands they owned, for a single note executed in June of 1965 to the Phoenix Mutual Life Insurance Company, which note the said Defendants continuously attempted to purchase from and after the time prior to when they instituted said suit.

"c. The aforesaid events were an abuse of process directed not to collection of said judgment and interest thereon, but to seeking and obtaining an inequitable forfeiture of Plaintiffs' rights in said Linn County lands while preserving most or all of the judgment then owned by Defendants individually for further attempts in stripping Plaintiffs of their properties.

"WHEREFORE, Plaintiff Maurice E. Jenkins prays for judgment in amount of the interest accruing upon the said Chariton County Grain Company judgment from and after the 7th day of November, 1966, and Plaintiffs further pray for the fair market value of the rights in said Linn County lands purchased for a nominal amount at

said November 7, 1966 sale, to-wit: $100,-000, for punitive damages in amount of $5,000,000 and for their costs expended herein.

## "COUNT III

"6. On or about the 30th day of March, 1970, Defendants (except Robert Madget) purchased and took assignment of a single note executed by Plaintiffs Maurice E. Jenkins and Hazel I. Jenkins to the Phoenix Mutual Life Insurance Company, together with separate Deeds of Trust pledging the aforesaid Linn County lands and separate Chariton County lands as security therefor, said Deeds of Trust being recorded in Book 390, at Page 172, Linn County, Missouri, and in Book 88, at Page 95, Chariton County, Missouri; and:

"a. On or about the 15th day of April, 1970, said Defendants had a notice served upon Plaintiffs Maurice E. Jenkins and Hazel I. Jenkins, his wife, stating that their failure to pay taxes upon the Linn County lands (covered by the Deed of Trust recorded in Book 390, at Page 172, Linn County, Missouri) for the years 1967, 1968 and 1969 were deemed by them to constitute a delinquency under said Deed of Trust and therefore also a delinquency under said single note; that said delinquency under said note was deemed by said Defendants to be grounds for them to declare the entire balance of said note immediately due and payable and that they so demanded payment. Upon the said 15th day of April, 1970, the judgment of the Circuit Court of Carroll County, that, in part, the title to said Linn County lands was in Defendant Robert Madget from and after the 5th day of January, 1967, was on appeal to the Supreme Court of the State of Missouri. Accordingly, both Defendant Robert Madget and certain of the Plaintiffs were then contesting actual title to said lands in the courts of Missouri, which fact said Defendants then well knew; but, notwithstanding, Defendants abused the processes of law to assert a default completely within the control of Defendants so as to assert an alleged right to an inequitable forfeiture sale of said Chariton County lands, with regard to which no default whatsoever existed, to the exoneration of lands, the title to which said Robert Madget had then possibly procured as aforesaid; and

"b. Defendants thereafter, consistently with the above, intentionally continued to assert the aforesaid defaults and exoneration rights so as to continuously place Plaintiff Maurice E. Jenkins in a position where no assets would be available to him for possible satisfaction or compromise of said Chariton County Grain Company judgment, and likewise intentionally caused all assets of the Plaintiffs in Linn and Chariton Counties to be underneath the cloud of said assertions and their demands that Plaintiffs Maurice E. Jenkins and Hazel I. Jenkins were responsible for the total obligations under the note, notwithstanding ownership of four-fifths of said lands by Defendant Robert Madget and his assignees, to the result that Plaintiffs would not have any assets available for payment of their rightful obligations, or the demands of Defendants with respect to said lands, and a forfeiture thereof to Defendants would result.

"c. As a result of the foregoing, Plaintiffs were required to institute a Declaratory Judgment action to protect their interests from the Defendants' asserted rights of sale under said Deeds of Trust, including injunctive relief to maintain the status quo pending determination of the Declaratory Judgment issues, the costs, expenses and attorneys' fees regarding the same being damages to the Plaintiffs by reason of Defendants' abusive use of the rightful processes of law.

"WHEREFORE, Defendants and their agents having wrongfully abused the process to which they were entitled, Plaintiffs pray for a judgment in amount of $5,000, for punitive damages in amount of $5,000,-000, and for their costs expended herein."

The defendants' motion asserted that none of the counts of the petition asserted a claim on which relief might be granted.

The motion also asserted the bar of res adjudicata and estoppel by verdict or estoppel by judgment, contending that all matters raised in the petition had been previously litigated to final conclusion. The motion also relied on the compulsory counterclaim rule, contending that the claims of plaintiffs arose out of the same transactions or occurrences as had given rise to prior litigation between the parties.

In this court, appellants assert that Count I of their petition states a cause of action based upon abuse of process and trespass and that Counts II and III state claims based upon abuse of process alone.

█ Their brief here appears to be the first time that appellants have asserted a reliance upon statement of a claim based upon trespass. In their memorandum in opposition to the motion to dismiss, overruled by Judge Green, plaintiffs stated: "As also set forth at argument of the motions, all three Counts in the current proceeding are for the tort of Abuse of Process * * *." At the oral argument before Judge Donelson, the judge stated to counsel for plaintiffs: "I notice, Mr. Brown, in the original suggestions that you made, that you were suggesting that these were based upon the tort of abuse of process." Counsel replied: "Yes, Your Honor. All three counts are grounded on abuse of process." In his oral argument, counsel stated: "We are involved in this particular case, Your Honor, with abuse of process in three counts; * * *." Plaintiffs' supplemental suggestions in opposition to the motion to dismiss heard by Judge Donelson continue to advance the theory of abuse of process. At no point was it ever suggested to the trial court that any claim was based upon a different theory. All of appellants' citations in this court in support of their contention that a claim for relief was stated are cases of abuse of process. In these circumstances, review in this court will be directed to this theory of the claim for relief on all three counts. *Southwestern Bell Telephone Company v. Webb,* 393 S.W.2d 117, 120 (Mo.App.1965); *Shelton v.*

*M & A Electric Power Cooperative,* 451 S.W.2d 375, 380[7, 8] (Mo.App.1970).

On this appeal, both appellants and respondents rely upon the cases of *Moffett v. Commerce Trust Company,* 283 S.W.2d 591 (Mo.1955), and *National Motor Club of Missouri, Inc., v. Noe,* 475 S.W.2d 16 (Mo.1972), for statements of the basic elements of a claim for damages for abuse of process. The statement from the National Motor Club case is sufficient for purpose of this appeal (475 S.W.2d 24):

"In 1 Am.Jur.2d Abuse of Process, § 1, p. 250, the definition is stated: 'Abuse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained.' At p. 252, § 4 of the same volume, the elements to sustain the action are said to be: '(1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process, and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. * * * Or stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.' See Annotation 80 A.L.R. 582; and also 72 C.J.S. Process § 120, p. 1189; and *White v. Scarritt,* 341 Mo. 1004, 111 S.W.2d 18, where defendants used the threat of continuing a taxpayer's suit to compel plaintiff and other landowners to pay defendants a fixed proportion of sales prices to get the suit dismissed before options for a courthouse site expired. In com-

menting on the White case, the court in *Moffett v. Commerce Trust Company,* Mo., 283 S.W.2d 591, 600, said, 'Of course, the defendants had the right as taxpayers to bring such a suit but it acted wrongfully in using the suit for the purpose of extorting money from the property owners, which they did not owe and could not have legally been compelled to pay.' "

As for Count I, the petition alleges no illegal use of process or ulterior motive in exercising such illegal use of process. The judgment creditors had a right to process for the collection of their judgment. They had a right to levy execution upon the personal property of the judgment debtor. In their brief appellants assert that they alleged that "Respondents attempted an improper levy without bond." There is no allegation in the petition of facts which would require a bond, there being no allegation that any property was seized under the execution. See Rule 76.22. Appellants also assert that the respondents' willful acts "were for an ulterior motive or purpose of attempting to levy without regard to the ownership of the property upon which levy was being attempted." According to the testimony of Mr. and Mrs. Jenkins at the hearing before the referee which resulted in the judgment, "the livestock on the farm and the machinery belonged to him alone except for a few hogs given to Mrs. Jenkins 'three or four at a time,' about 15 through the year." *Madget v. Jenkins, supra,* at 770. There is no allegation of any actual levy on the property of another and as appears again from *Madget v. Jenkins,* supra, at 770, " * * * an attempt to levy on personal property had been unsuccessful because Hazel Jenkins, the wife of Maurice E. Jenkins, then claimed joint ownership in all the personal property."

In other words, insofar as Count I is concerned, the petition alleges only an attempt to employ process to levy on personal property of the judgment debtor without any allegation whatsoever of illegal coercion of the debtor or his wife or son, who are referred to in Count I. No cause of action for abuse of process was stated in Count I and the trial court correctly so concluded.

The reliance upon which Count II is based is vague so appellants' brief will be employed to find just what the complaint found in that count is. It states:

"With respect to Count II, it is submitted the 'regular' processes of Respondents consisted of their conducting an execution sale upon their judgment and then filing and prosecuting a Quiet Title suit, the end result of which is rather fully set forth in *Madget v. Jenkins,* 461 S.W.2d 768 (Mo. 1971). As observed by Judge Hyde's opinion, although it might not be the gentlemanly way to go about collecting the judgment, it was nevertheless a legally proper process method to levy upon the land than destroy Appellants' deeds with the following Quiet Title suit.

"However, concurrently with these 'regular' processes, Appellants allege Respondents continuously attempted to purchase a single Note securing both the property which was the subject matter of the execution sale and the Quiet Title suit and additional lands of Appellants (improper act not authorized by the 'regular' processes), with an ulterior motive or purpose of denying to Appellants the collateral of these other properties and coerce an unreasonable settlement of the 'regular' process prior to their conclusion. Not being able to consider satisfaction or compromise, Appellants were forced to forego these possibilities and run the litigation to its end as set forth, to their additional expense and without more economical satisfaction of the obligations of Appellants as would have been otherwise possible. Accordingly, the elements of: (1) willful acts not proper in the regular conduct of the processes, (2) ulterior purpose, and (3) damages; have been clearly shown, quite independently from those matters necessarily decided by *Madget v. Jenkins,* supra."

Unfortunately, the brief is little more enlightening than the petition, except

that appellants have foregone any claim that the abuse of process consisted of bringing the quiet title suit until after the execution sale. In view of the holding of *Madget v. Jenkins,* supra, they could hardly do otherwise.

Thus it appears that the "abuse" complained of was that "Respondents continuously attempted to purchase a single note securing both the property which was the subject matter of the execution sale and the Quiet Title suit and additional lands of appellants * * *." However, there is no allegation that respondents had no right to attempt to purchase the note. Obviously they had the right to do so. Whether the note was owned by respondents or the insurance company, the Chariton County farm would have been equally available as "collateral." Appellants state that the motive of respondents was to "coerce an unreasonable settlement of the 'regular' process prior to this conclusion." No basis for this statement is to be found in the petition, but even if it were directly alleged, it would state no claim of abuse of process in view of the fact that the attempts to purchase the note, relied upon in Count II, were not, in any event, dependent upon the aid of legal process. Adverting to the petition, which appellants' argument in their brief generally ignores, the claim there as to Count II seems to be that the execution sale and purchase by Madget of the farm for $500 and the subsequent quiet title suit were an abuse of process because they represented not a bona fide effort to collect the judgment but an effort to forfeit appellants' rights in the Linn County land while preserving the most of their judgment. Understandably, this allegation is not relied upon here, in view, again, of the finding in *Madget v. Jenkins,* supra, that the $500 successful bid was the result of "chilling" of the sale by appellants' attorney. 461 S.W.2d at 770, 775.

In short, Count II contains no allegation of illegal use of process for an ulterior purpose and stated no claim for relief.

Insofar as Count III is concerned, the abuse of process complained of appears to be the assertion by the holders of the note secured by a deed of trust on both the Linn and Chariton County lands of appellants of "a default completely within the control of defendants * * *." One of the findings of the Linn County Circuit Court in the case of *Jenkins, et al. v. Andrews, et al.,* No. 2192, the case in which appellants sought, among other relief, injunction against foreclosure of the deed of trust on the Chariton County farm, was: "Plaintiffs were in default for failure to pay the 1967, 1968 and 1969 taxes, and for failure to pay any principal payments since the assignment of the note and the note holders were entitled to accelerate the entire debt and seek foreclosure." Having been found in default in the action which they brought, there is no basis whatsoever for any claim that the assertion of such default was an abuse of process. It was nothing more than the holders of the note and deeds of trust were entitled to do.

The Linn County Circuit Court found against the appellants on all of their claims in the action to enjoin foreclosure of the deed of trust, including the claim of no default and the claim of right of exoneration, referred to in the petition here. The petition in this case simply asserts no basis for a claim of abuse of process in connection with the foreclosure proceedings.

As above noted, appellants have cited *Moffett v. Commerce Trust Company* and *National Motor Club of Missouri, Inc., v. Noe,* supra, in support of their contention that they have stated a cause of action for abuse of process. Neither of those cases is helpful to appellants. In *Moffett,* the petition was held not to state a cause of action for abuse of process. A large number of separate actions were relied upon but the court found that the proceedings were legitimate efforts to establish indebtedness to the estates represented by the defendant and obtain judgment therefor, with no allegation that plaintiff was compelled to do

something apart from the judgment that could properly be obtained. 283 S.W.2d 600.

National Motor Club involved a counter-claim which charged a classic abuse of process, i. e., that plaintiff had brought multiple suits against defendant for numerous illegal purposes other than the collection of damages.

Appellants have also cited *Flynn v. Songer*, 399 S.W.2d 491 (Ky.1966). In that case plaintiff had caused a garnishment to issue to defendant's employer in connection with a claimed indebtedness of defendant to plaintiff's corporate employer. Defendant obtained a warrant for plaintiff's arrest for illegal practice of law for the avowed purpose of using such procedure to compel withdrawal of the garnishment, an unwarranted use of the criminal process.

None of these cases is helpful to appellants in the slightest degree. They have failed to state a claim for relief. The trial court properly sustained respondents' motion on such grounds and no consideration need be given to other grounds asserted in support of the trial court's judgment.

Judgment affirmed.

All concur.