**STATE of Missouri, ex rel. RAMBLIN' INTERNATIONAL, INC., et al., Relators,**

v.

**The Honorable William J. PETERS, et al., Respondents.**

**No. WD 37419.**

Missouri Court of Appeals, Western District.

June 17, 1986.

Frank P. Barker, III, Mark W. Cowing, Barker, Rubin & Sonnich, Robert K. Ball, II, Kansas City, for relators.

Kevin C. Travis, Ramona K. Kantack, Grier & Swartzman, Kansas City, for respondents.

## ORIGINAL PROCEEDING IN MANDAMUS

Before CLARK, C.J., and BERREY and DIXON, JJ.

DIXON, Judge.

This mandamus action stems from a discovery dispute in the trial court. The underlying action was in contract. One of plaintiff's pleaded theories was that the corporate defendant, Ramblin' International, Inc., was the alter ego of the defendant Bill Dailey. The plaintiff sought the minute book and financial records of Ramblin' International, Inc. by interrogatory and request for production of documents.

It is unnecessary to detail all of the bickering between the parties over the request for discovery, but certain facts and circumstances are helpful in understanding the ultimate issue. The plaintiff's discovery request was first ruled upon by Judge Mauer who determined that plaintiff was only entitled to corporate records from Ramblin' for the period preceding the plaintiff's discharge. After several attempts to have the matter reconsidered plaintiff moved for a change of judge, and the matter was reassigned to Judge Peters. Plaintiff filed a renewed motion for reconsideration before Judge Peters in March 1985. The motion culminated in an order by Judge Peters dated April 30, 1985, which ordered the production of documents and which in relevant part reads as follows: "[T]hat the defendants produce the corporate minute book and corporate financial records, as requested by plaintiff, within ten days."

The defendants proffered some discovery and a dispute arose as to the meaning of the court's order. On June 14, 1985, the plaintiff filed a motion for sanctions. On June 20th, the court participated in a telephone conference with the parties and according to plaintiff "impressed upon counsel for defendants the unequivocal and unambiguous mandate of the April, 1985, order." Plaintiff then received the corporate minute book, bank statements, cancelled checks and wire transfer memos showing transfers to other bank accounts. Plaintiff renewed the motion for discovery sanctions and the defendants produced further financial records.

On July 11, 1985, the court conducted a hearing on the renewed motion for sanctions. There was no evidence presented and the transcript of the proceedings has been filed with this court.

The order written following the hearing, omitting formal parts, reads as follows: "Arguments heard; the Court finds counsel for defendants are in contempt of the Court's previous order and this cause is continued and counsel for defendants are ordered to appear in Division 16 on Monday, July 29, 1985, at 9:00 a.m."

There is no adequate way to characterize the proceedings at the hearing preceding the entry of the order by the court. The following excerpts demonstrate the tenor of the proceedings:

THE COURT; I don't want you to take a lot of time. The fact is, the fact is this Court ordered you, as counsel for this party to produce financial records. Now, you can talk about the malarkey of the film company all you want to. You can talk about the records that are available all you want to, you have failed to comply with the Court's order. The Court considers that you, as counsel for defendant, are in contempt of the Court's order.

If you think that you can hoodwink this Court by talking about the malarkey of the film company, or anything else, you're not going to be successful. We are at this point, the Court considers you, as counsel for the defendant, to be in contempt of the Court's order.

. . . .

Now, I consider that you are in contempt of this Court's order. I will do one of two things, and you make the choice here today, I'll either sustain the Motion for Sanctions and grant what she requests, or I will *give you until I return* on July 29th to produce them, or you and Mr. Cowings [sic] be here with individual tooth brushes. Do you know why?

MR. BARKER: I understand the Court.

THE COURT: Because you are in contempt of this Court's order. I find you are now in contempt of this Court's order and *I am going to give you a choice,* I'll either sustain her motion for sanctions and give her what she requests today, or I'll give you one more chance to produce the financial records. And if you don't do it, you and Mr. Cowings [sic] are going to be in jail on July 29th until the records are produced.

Do you understand that?

MR. BARKER: I understand that, your Honor.

THE COURT: All right.

Anything further you want to put on the record, do so now, because then I'm going to give you that choice.

MR. BARKER: May I have a moment?

THE COURT: Pardon?

MR. BARKER: May I have a moment?

THE COURT: Sure.

MR. BARKER: I have nothing further to put on the record, your Honor.

I would advise the Court that either myself or Mr. Cowings [sic] will personally review every file in Bill Dailey's office, and every file in the office of Ramblin's [sic] International between now and the date that you return to ascertain that, in fact, every financial record has been produced or will be produced—

THE COURT: You had that opportunity. You are trying to snow somebody and it's not going to be successful. You're not going to tell this Court that you're going to review records in that office.

The unequivocal order of this Court was that you produce financial records. I didn't tell you to review some files in the office; you're playing a game and the Court so finds.

The Court finds that you are in contempt of this Court's order to produce financial records; and you won't produce any more then than you do now. *And what I should do then is to enter an order today.*

I think before I close out the matter *I suspect that they're better off with the financial records.* There is a reason why you're hiding the financial records and *I'd rather that they have the discovery and have the financial records that they requested. And I'm going to give you one more opportunity to do that.*

I want you and Mr. Cowings [sic] here on July 29 at 9:00 a.m. and I will then consider whether to find you in contempt and place you in custody until such time as the records are produced.

Do you have any question about that?

MR. BARKER: I understand what the Court says. What I understand the Court wants done is that any financial records that have not been produced get produced between—immediately.

THE COURT: Any financial records.

MR. BARKER: Any financial records.

THE COURT: This is not a complicated term. They have been trying to get them; they're entitled to them; this Court has ruled they're entitled to them; I told Mr. Cowings [sic] in the telephone conversation unequivocally they're entitled to them, he said that he understood that and would produce them and you're still going back and talking about the film company and you're talking about the records in their office.

You can't hoodwink this Court and you can't hoodwink these people. They're entitled to the records and you're obligated to produce them. The time of playing games and hiding is over. *You're either going to have produced them on July 29th, or you and Mr. Cowings [sic] are going to be placed in custody until they are produced.*

You decide which way you want to go.

MR. BARKER: I understand.

Only one of the counsel for defendants, Mr. Barker, was present. The parties have assumed that the contempt order applied only to Mr. Barker and a Mr. Cowing since they had signed all the pleadings for the firm, which was counsel for defendants. On the same date the order was entered finding the attorneys for defendants in contempt, they filed a motion for a change of judge. This motion was filed at 4:23 p.m. on the 11th of July.

On July 16, 1985, the attorneys for plaintiff hand delivered a 5-page letter describing the records they wished to have produced and describing many items of financial and corporate records. Defendants filed a Response to Order for Production on July 29th at 8:53 a.m. This was a 33-page document listing 451 separate groups of documents, many of the groups containing hundreds of items. There is no contention that this discovery made prior to July 29th is not responsive to plaintiff's requests.

On July 29th, the court entered the following order:

Now on this 29th day of July, 1985, the following matters come before me for determination in the above-captioned cause:

(1) Plaintiff's Renewed Motion for Sanctions, filed June 14, 1985, and submitted for determination at a hearing held at 9:00 a.m. on July 11, 1985 and continued to this date;

(2) A finding made at the hearing on July 11, 1985, that defense counsel were in contempt of this Court's written Order of April 30, 1985 and oral Order of June 20, 1985 that defendants produce the corporate minute books and financial records of defendant Ramblin' International, Inc., disposition of which was continued to this date;

(3) Defendants' Motion for Change of Judge, filed at 4:23 p.m. on July 11, 1985; and

(4) Plaintiff's Motion for Ruling on Plaintiff's Motion for Sanctions Prior to Change of Judge, filed July 17, 1985.

Having reviewed the briefs and reports of counsel, the Court finds as follows:

1. That plaintiff is entitled to a ruling on his Renewed Motion for Sanctions before the Court rules on defendants' later-filed Motion for Change of Judge;

2. That since the July 11, 1985 hearing at which defense counsel was [sic] found in contempt of the Court's previous Orders to produce certain corporate minute books and financial records, defense counsel and defendants have endeavored in good faith to produce these corporate minute books and financial records, such that the Court will impose no punishment for the contempt;

3. That notwithstanding defendants' production of documents since July 11, 1985, plaintiff is entitled to sanctions for defendants' failure to produce the complete corporate minute books and financial records of defendant Ramblin' International, Inc. in response to the April 30, 1985 written Order and June 20, 1985 verbal Order of this Court, and good cause appearing therefor;

IT IS HEREBY ORDERED that defendants' Motion for Change of Judge is overruled pending determination of plaintiff's renewed Motion for Sanctions;

AND IT IS FURTHER ORDERED that no punishment shall be imposed for defense counsel's contempt as determined on July 11, 1985;

AND IT IS FURTHER ORDERED that notwithstanding the foregoing, plaintiff's Motion for Sanctions is hereby sustained, and defendants' pleadings in response to Count III of plaintiff's First Amended Petition are hereby stricken, such that the allegations contained in Count III of plaintiff's First Amended Petition are deemed admitted and this Court declares that defendant Ramblin' International, Inc. is and was the alter ego and mere instrumentality of defendant Bill Dailey and Bill Dailey is personally responsible for the debts and liabilities of Ramblin' International, Inc.; and defendants shall not be permitted to oppose or defend plaintiff's claims in Count III of his First Amended Petition; and defense counsel or defendants shall reimburse plaintiff for his expenses, including reasonable attorneys fees in the amount of $300.00, caused by defend-

ants' failure to produce promptly the requested documents in compliance with this Court's previous Orders;

AND IT IS FURTHER ORDERED that pursuant to Missouri Supreme Court Rule 51.05, the above-captioned cause is transferred to the Presiding Judge for reassignment.

Defendants filed their petition for mandamus with this court on August 12, 1985, and plaintiff's suggestions in opposition were filed simultaneously. On August 22, 1985, an alternative writ of mandamus issued from this court which ordered Judge Peters to set aside all of his order of July 29th, except the transfer of the cause for reassignment. The respondent Judge Peters filed a motion to quash and an answer to the writ. Judge Peters contended in those pleadings that the issue of contempt was moot because no punishment had been given. The motion and the answer claim that the trial court had jurisdiction to enter the sanctions of the July 29th order because of the *earlier* refusal of the defendants to produce the documents. Respondent Judge Peters and plaintiff's counsel *do not contend* that the voluminous discovery and production of documents made before July 29th was not adequate and proper. In fact, respondent's July 29th order finds good faith compliance with the discovery orders.

■ The motion and the answer of respondent Judge Peters contend that he retained jurisdiction, despite the motion for change of judge, to determine the matters before him concerning the discovery and production of documents. In support of that contention, he cites *Jenkins v. Andrews*, 526 S.W.2d 369 (Mo.App.1975), and *Bryant v. State*, 604 S.W.2d 669 (Mo.App. 1980). This court issued the preliminary writ upon the rationale of those cases. As *Jenkins* holds, when a court has a motion or other pending matter under consideration, an attempt to remove the judge does not destroy the court's power and jurisdiction to complete the pending matter. *Jenkins*, 526 S.W.2d at 373. That same ratio-

nale vests this court with jurisdiction to control such orders by means of extraordinary writs. To hold otherwise would create a hiatus in the writ power. This court likewise has the authority to enforce its writ powers by shaping the writ to meet the needs of the case. In the instant case, that includes the power to direct orders and writs to a successor judge to permit implementation of the court's superintending control through the writ power. This court was not aware until after the issuance of the preliminary writ that the presiding judge had transferred this cause to another Division with Judge McKelvey presiding. When that was made known to this court, a suggestion was made that the parties seek reconsideration of Judge Peters's orders by Judge McKelvey so that Judge McKelvey would have an opportunity to consider the matter before being joined as a respondent. Such a motion was filed in the trial court and denied. Judge McKelvey's order demonstrates that he did not understand the basis of the issuance of the writ against Judge Peters. Judge McKelvey was then added as a party respondent on this court's own motion. The motion to quash was denied.

■ Judge Peters has by his order set aside that portion of his July 11th and July 29th orders relating to contempt. He had continuing jurisdiction to do so under *Jenkins, supra,* and the writ of this court which directed him to set aside his July 29th order. The contempt portions of the orders are no longer at issue, as the parties concede.

■ It is the position of the respondents that the relators had failed to comply with the April 30th order to produce the documents within ten days. They argue that the eventual production of the records between July 11th and July 29th did not "comply with the order as stated" and thus permitted the imposition of sanctions by Judge Peters on July 29th. Cited in support of this is *State of Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370 (10th Cir.), *cert. denied,* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978). There is no doubt that untimely compliance with a discovery order after or even before the filing of a motion for sanctions does not prohibit the imposition of appropriate sanctions for noncompliance with the order. That proposition, sound as it may be, does not determine the issue in the instant case.

■ The issue in the present case turns upon the factual background. Rule 61.-01(d) reads in pertinent part as follows:

> If the motion for inspection or production is granted and if the party against whom the order is entered *fails to comply as stated,* the court may, upon motion, make such orders in regard to the failure as are just and among others the following:

(Emphasis added). This sentence makes it plain that there must be a failure to comply before the sanction is applied. There can be no doubt that on July 11th the court could have ordered the imposition of sanctions. The question of the improper order of contempt aside, the court did not impose any sanctions on July 11th. Respondent's counsel concedes that the finding of contempt on July 11th cannot support the other sanctions.

■ The court on July 11th did not impose any sanctions, but instead extended the original discovery order to July 29th. Given that option, the relators complied with the order within the extended time. There was no noncompliance with "the order as stated" to support the imposition of sanctions.

■ Moreover, the imposition of sanctions is a discretionary act by a trial judge. The serious sanction here imposed of denying any defense to Count III of the petition and in effect directing a verdict for the plaintiff would be an abuse of discretion if otherwise permitted.

The alternative writ in mandamus is made peremptory and Judge McKelvey as respondent is directed to set aside Judge Peters's order of July 29, 1985.

All concur.