**NATIONAL MOTOR CLUB OF MISSOURI,
INC., a Missouri Corporation,
Appellant,**

**v.**

**Jerry L. NOE et al., Respondents.**

**Nos. 55159, 55087.**

Supreme Court of Missouri,
Division No. 2.

Jan. 10, 1972.

David W. Bernhardt, Kenneth W. Johnson, Bussell, Hough, Greene & Bernhardt, Springfield, for appellant.

Donald W. Jones, James K. Prewitt, Church, Prewitt, Jones, Wilson & Karchmer, Springfield, for respondents.

PRITCHARD, Commissioner.

In a seven count second amended petition, appellant, National Motor Club of Missouri, Inc., brought actions against defendants generally alleging unfair competition (and asking for damages and injunctions) in a motor service club business system in which National claims the exclusive use. Further damages and injunctive relief are claimed against individual defendants based upon alleged stockholder and employee contracts of noncompetition. Count II of the second amended petition was voluntarily dismissed, and the remaining counts pray for damages against all defendants of about $140,000.

On September 22, 1969, the trial court granted defendants' motion for sum-

mary judgment on all counts of National's second amended petition. On October 4, 1969, National filed a motion to set aside the summary judgment. On October 10, 1969, this motion came on for hearing with the parties present by counsel, and the trial court entered an order modifying the summary judgment of September 22, 1969, by omitting reliance on paragraph No. 5 of the summary judgment motion. On November 1, 1969, defendants filed a motion to dismiss this appeal upon the ground that it was not timely filed. One question is whether the hearing of October 10, 1969 constituted a ruling upon National's motion to set aside the summary judgment, the court's order of that date merely mentioning the modification and not expressly touching upon the request to set aside the summary judgment. Defendants do not cite any case holding that the trial court's action (apparently on its own motion) in modifying the summary judgment also constituted a ruling upon National's motion to set it aside. It must be held that there was never any ruling upon the motion to set aside the summary judgment other than by the automatic operation of Rule 82.05 (a), V.A.M.R.—ninety days after the filing of the motion. In the case of In re Franz' Estate, 359 Mo. 362, 221 S.W.2d 739, 740 [1], respondents filed a motion to set aside an order of dismissal of a claim for trustee's compensation. It was held that the motion was nothing more than a motion asking the court to reconsider its ruling. "It was, in fact, simply a motion for rehearing or new trial." It thus postponed the finality of the judgment. See also In re Jackson's Will, Mo.App., 291 S.W.2d 214, 219[7, 8]. The finality of the summary judgment against National was postponed for ninety days from the time it filed its motion to set it aside. The notice of appeal, filed November 1, 1969, was within that time, and, although prematurely filed, under Rule 82.05(b) it is considered as filed immediately after the time the judgment became final for purposes of appeal. Defendants' cited case of Heard v. Frye's Estate, Mo.App., 319 S.W.2d 685,

is distinguishable because there the notice of appeal was filed more than ten days after the court *overruled* a motion to reinstate the case.

Defendants say the appeal should be dismissed for the further reason that appellant did not request the court reporter to prepare a transcript within thirty days after the notice of appeal. The record shows that to be true, but the requirements and the reason for Rule 82.19 were satisfied in this case by defendants' request for a transcript within such time on their cross-appeal. The reporter was fully apprised of the need for a transcript, and the matter of sharing the cost was discussed in defendants' letter to the reporter, even though at the time National had not filed its notice of appeal. The trial court was thus authorized to extend the time for filing the transcript. There was also good reason for this court to order a further extension of time to file transcript to July 25, 1970, in that the court reporter was unable to complete it prior to the time it was due, April 25, 1970. For the reasons indicated, defendants' motion to dismiss National's appeal is overruled.

Count I of National's second amended petition, after its voluntary deletions, alleges that it is a Missouri corporation with principal offices in Springfield. National is in the business of maintaining and operating a motor service club within this state to motor vehicle owners for their welfare, convenience and safety for which it collects fees for memberships, and that it has expended great effort and large sums of money in establishing its organization and in soliciting memberships. Defendants Noe, Sitters and Oldham, with others, have organized United Automobile Association, Inc., a Nebraska corporation authorized to sell motor club memberships in Missouri in competition with National. Each defendant wrongfully appropriated National's business system, including original and unique sales methods and techniques, prepared sales presentations and business forms, intending to injure it and deprive

it of gains and profits which it otherwise would have gained, and "did wrongfully, knowingly, injuriously, deceitfully and fraudulently, against the will, and without the consent of the plaintiff imitate and copy the said business system, including the original and unique sales methods and techniques, the prepared sales presentations and forms and business forms for use by the defendant corporation, United Automobile Association, Inc.," in Missouri in order to denote to Missouri citizens that memberships being offered for sale by United were the same as those sold by National for the purpose of unlawfully competing with National in Missouri. Damages in the amount of $100,000 were prayed, as was injunctive relief against the use of or communication of the business systems, sales methods, and techniques of National. Two noncompetition contracts among stockholders of the National Motor Clubs of several states and by employee Joe Sitters were attached to the second amended petition.

Count VI alleged further that National had confidential membership lists showing membership and renewal dates which constituted trade secrets and which were entrusted to Noe, Sitters and Oldham, who used the lists and records to change memberships from National to United; and that Noe, Sitters and Oldham have severed relations with National and have conspired together and with United to entice key employees away from National. Damages in the amount of $10,000 and an injunction are prayed for in Count VI.

The answers to Counts I and VI are largely general denials with an allegation that the contracts attached to the second amended petition were void as against public policy, fraudulently procured, and lacked consideration.

Defendants say the appeal should be denied because National did not controvert the motion for summary judgment and its supporting affidavit by any affidavit under Rule 74.04(e). The depositions and interrogatories and all exhibits may be considered as evidence in opposition to the motion. Reis v. Metropolitan St. Louis Sewer Dist., Mo., 373 S.W.2d 22. What National has pleaded in Count I is that defendants have used its material in passing off as United's the automobile club services of National. What does appear by exhibits is that parts of sales brochures of National and United do show similarities and, in part, exact duplications, for example: "Personalized Touring Service" on National's brochure sheet shows on United's sheet, "Personalized Travel Service," and a drawing on a travel log or guide is exactly the same on both. On another, a clock drawing is exactly the same, as are these words, "Famous Last Words . . . 'I'm a Safe Driver! That Happens to the Other Fellow.' The National Safety Council Says:—One Human Being is Now Dying Each 12 Minutes. . . . ."

National's president, James C. Craig, admitted in his deposition and interrogatory answers that National's sales kit, brochures and other documents claimed by it to be unique were copies from other motor clubs, were widely known in the business, and were of necessity exhibited to potential customers by National's sales representatives. It is doubtful because of those facts that this material constituted trade secrets as claimed under National Rejectors, Inc. v. Trieman, Banc, Mo., 409 S.W.2d 1, 18, 19[2], quoting Restatement of Torts, § 757. The basis for the allegation of Count I is unfair competition. That action is defined in 87 C.J.S. Trade-Marks, Etc. § 13, p. 241: "Unfair competition is a form of unlawful business injury. * * * It consists, essentially, in passing off or attempting to pass off, on the public, the goods or business of one person as and for the goods or business of another, or in the conduct of a trade or business in such a manner that there is either an express or an implied representation to that effect. In fact it has been said that it is nothing but a convenient name for the doctrine that

no one should be allowed to sell his goods as those of another; and it may be stated broadly that any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for the goods or business of another, constitutes actionable unfair competition." See also 52 Am.Jur. Trademarks, Tradenames, Etc., § 86, p. 586 et seq.; and 2 A.L.R.3d 748, 749, § 2, discussing the matter of unfair competition in the use of material (or slogan) which has acquired a "secondary meaning," i. e., where it has become identified in the mind of the public with plaintiff as the source of goods or services which the material (or slogan) advertises; and the telephone directory cover annotation, 63 A.L.R.2d 1101, § 6, p. 1100 quoting National Tel. Directory Co. v. Dawson Mfg. Co., 214 Mo.App. 683, 263 S.W. 483.

■ All that appears with respect to the allegation of unfair competition in Count I (and the unauthorized use of membership lists and renewal dates of Count VI—which lists and dates may be trade secrets under the National Rejectors case, supra) is the affidavit of Jerry Noe. Nowhere does National irrefutably admit any facts which would foreclose it from litigating these issues. Noe's affidavit is nothing more than a further denial of National's claim, and the affidavit thus does not establish by unassailable proof that there is no genuine issue of fact remaining. See Cure v. City of Jefferson, Mo., 380 S.W. 2d 305, 309[1, 2]; E. O. Dorsch Electric Co. v. Plaza Construction Co., Mo., 413 S.W.2d 167. It is of no consequence in this action for unfair competition and its extenuation in the allegation of misappropriation of a trade secret (membership lists and renewal dates) that National's materials were not copyrighted or patented. While it is true that copying per se of such unregistered materials is not unlawful as defendants contend, citing Sears, Roebuck & Co. v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, yet the facts here alleged, and not being foreclosed

by unassailable proof to the contrary, may show something more than mere copying. The matter of an action for unfair competition is separate and apart from an action involving misuse of trade-marked material. 87 C.J.S. Trade-Marks, Etc. § 87, p. 314.

■ It is true that National does not specifically present a point with citations and argument as to the judgment against it on Count VI. However, it does attack the propriety of the entire summary judgment against it. National says that defendants do not specifically point to any evidence in support of their motion which would establish that there was no genuine issue of fact as to any issue (necessarily including Count VI). National says also that the court erred in denying it further discovery to meet the allegations of the motion. In view of the fact issue of Count VI remaining in the case, as above ruled, and National's attack on the entire judgment because of the admonition of Cooper v. Finke, Mo., 376 S.W.2d 225, 229, and Rule 74.04(f), defendants' contention that National has abandoned its Count VI should be denied.

It follows from what has been above said that the trial court erred in granting summary judgment as to Counts I and VI of National's second amended petition.

National's notice of appeal specified that it appealed only from the summary judgment against it on its Counts 1, 2, 4, 5, 6 and 7 of its petition. As noted, Count II was voluntarily dismissed. The notice of appeal did not include Count III, the theory of which was a stockholder's agreement in which each stockholder agreed not to compete with National, or any named National Motor Club, within two years after such stockholder had divested himself of National's capital stock. Injunctive relief and $15,000 damages were asked against each of the named defendants in this Count, Jerry L. Noe and Joe Sitters. Since National did not appeal from the judgment

against it on Count III, consideration of its point thereon is precluded.

■ Joe Sitters started his employment with National Motor Club of Oklahoma (one of National's several affiliated motor clubs) in 1962, and acquired a substantial amount of his training from that club. Sitters was a representative of National and became a district manager in 1964, working under Noe as state manager. On February 8, 1966, Sitters signed an agreement with National whereby it agreed to appoint him "in a managerial capacity for such compensation as is hereinafter specified for a period of not less than sixty (60) days after this date, and provided that such appointment after the first sixty (60) days hereof shall be terminable at the will of either party upon first giving the other party fifteen (15) days notice in writing." National agreed to train Sitters in its management field and to divulge to him its particular methods of management, territory and developing sales techniques, etc.; and a list of its members which National considered trade secrets. Sitters' compensation was agreed to by National as 3½ percent commission on all new and renewal business from the territory or district to which he was assigned, and 3½ percent of such business "which shall be expressly paid to the Undersigned as a training and development bonus, and not otherwise." The "training and development" bonus was recited to be an incentive to Sitters to participate in National's training program, thus furthering the sale of its memberships, "and is a training expense of the Company." Sitters agreed that within three years of termination of his relationship with National to return to it all training bonuses received by him, should he establish a new relationship with another automobile club within such time. It was mutually agreed that prior training of a six-month term had a value in excess of $5,000 as furnished to Sitters, and he agreed to return that amount to the company in the event he took employment in any capacity within three years from the

date of his termination with any other automobile association, club or entity. National sued Sitters in Count IV on this agreement, praying damages for $5,000 as the value of his training prior to February 8, 1966, the date of the written agreement. National's vice president, J. Roland Eddie, testified by deposition that he saw Sitters sign the agreement and told him he had to sign it "if he was going to work." "I said, 'Sign this agreement and you can go right back to work.'" No money, promises or written promises were given Sitters. He was previously employed on a draw; he did not get a new position when he signed it, or anything new. Sitters says the agreement is void because of a lack of consideration, and that contention is sustained under the pleaded facts and the facts appearing in support of the motion for summary judgment. In 1A Corbin on Contracts, § 234, p. 357, the matter of the legal obligation to pay for past services beneficial to defendant but not requested by him is discussed. It is said, " * * * [I]t is also clear that if a performance is rendered by one person without any request by another, it is very unlikely that this other person will be under a legal duty to pay compensation. It has been the general assumption, also, that in such cases the law will not enforce a subsequent express promise to pay compensation." There is here no pleading or fact tending to show that Sitters at any time prior to the date he signed the contract agreed to compensate National for the value of its "training bonuses" allegedly supplied to him or that he requested the training. Even if the facts gave rise to a moral obligation to reimburse National for the amount prayed for by it, such is by the great weight of authority insufficient to constitute consideration for Sitters' executory (and conditional) promise to pay. 1 Williston on Contracts, 3rd Ed., § 148, p. 635; 17 Am. Jur.2d Contracts, §§ 130, 131, pp. 477, 478; Annotations 17 A.L.R. 1302, 1359; 79 A.L. R. 1346; 8 A.L.R.2d 787; and see Heckmann v. Van Graafeiland, Mo.App., 291 S.W. 190, 192[7, 8] and cases cited.

There is yet another reason why the court did not err in granting summary judgment on Count IV (for Sitters) and also on Count V (for Oldham) of the second amended petition.

■ As stated, Sitters' contract provided for the payment of damages if he associated with another automobile club within three years after his termination with National. Oldham's alleged contract provided that he should not enter into competition with National either directly or indirectly for a period of two years after employment should cease with National. Count V, against Oldham, has no prayer for damages, but the first petition contained such a prayer for $5,000, a matter of no import in view of the ruling here made. The condition of payment of damages or of noncompetition was void as against public policy because not reasonably limited to any territory of competition. See 6A Corbin on Contracts, § 1396, p. 110, and the there referenced factually analogous case of Foster v. Union Central Life Insurance Company, 103 Ga.App. 420, 119 S.E.2d 289. See also Prentice v. Williams, Mo.App., 324 S.W.2d 466; and Prentice v. Rowe, Mo.App., 324 S.W.2d 457, both holding invalid restrictive covenants of noncompetition not limited as to area.

■ Count VII of National's petition was against Alva E. Paul only. It is based upon a purported stockholder's agreement of noncompetition so long as each stockholder continued to hold stock in eight affiliated National Motor Clubs, Inc. (Texas, Oklahoma, Louisiana, Arkansas, New Mexico, Colorado, Missouri, and Kansas) and for a period of two years after such stockholder shall have divested himself of his last share of stock. On December 10, 1964, the date of the agreement, Paul had 30 shares of stock in the Oklahoma corporation and 20 shares in the Missouri corporation. The depositions and affidavits in support of the motion for summary judgment show that all of the stockholders of the eight corporations did not sign the

agreement. Missing are four corporate stockholders, National Motor Clubs of Texas, Oklahoma, Louisiana, and Arkansas, which hold stock in nine other affiliated clubs of different states. Also missing as signers are individual stockholders James A. Arms, W. T. Hobbins, Frank Fuller, O. F. Temple and Herman Ash. Defendants claim that the agreement is unenforceable because the condition precedent of all parties to it signing it did not occur. The agreement initially recites that it is "between *all* the stockholders of the following corporations," and "That for and *in consideration of the mutual covenants and promises* herein contained and other good and valuable consideration, the Stockholders, jointly and severally agree individually among themselves as follows:". (Italics added.)

No case has been cited by either party precisely bearing upon the point of whether a contract among all shareholders for noncompetition is enforceable because not all of such shareholders have signed it. Although not without exception the rule is stated in 17 C.J.S. Contracts § 62, p. 734, "It has been held in numerous cases that, where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed it." Under the terms of this purported agreement, all of the stockholders would be the beneficiaries of the provision against noncompetition should one or more of them breach it. Thus all remaining stockholders would be necessary parties to an action for a breach of the agreement. "The object of a signature is to show mutuality or assent." 17 C.J.S. Contracts § 62, p. 732. The stockholders who did not sign the agreement could not be bound by its terms for noncompetition. The plain terms of the initial paragraph of the contract are that *all* the stockholders sign it before there could exist mutual promises which would furnish consideration for it. Of some analogy is the case of Hess v. Lackey, 191 Ind. 107, 132 N.E. 257, 258, where there was a con-

tract among legatees not to contest the codicil of a will and one legatee did not sign it. The court said, "Appellees contend that the alleged contract is within the general rule that where a contract in writing is obviously drawn as a mutual agreement between several parties, to be signed by all of them, it must be so executed by all of such parties, by signing it or otherwise acceding to its terms, so that it binds them all, or it will not bind any of them [citing cases]. In this contention we think the appellees are correct." The words "We, the undersigned, children of Rachael A. Lackey" clearly were held to evidence an intention to bind all her children, and clearly meant to mean all the beneficiaries and not part of them. See also Ely v. Phillips, 89 W.Va. 580, 109 S.E. 808, 810[4]; Dean v. Dean, 229 S.C. 430, 93 S.E.2d 206; and Wallace v. King, 205 Ark. 681, 170 S.W.2d 377, 381. In Kaneko v. Okuda, 195 Cal. App.2d 217, 15 Cal.Rptr. 792, the defendants each severally owned capital stock which they agreed to sell to plaintiff. One of the owners of stock named in the contract did not sign it, but the court held it to be a complete contract enforceable as to those defendants who signed it. No mutual covenants were involved as here. Nor were mutual promises involved in Bank of United States v. Chemical Bank & Trust Co., 140 Misc. 394, 246 N.Y.S. 595, where signing guarantors were held liable as against their contention that they were not bound because one named guarantor did not sign. The words there "we jointly and severally agree to pay" bound the signing guarantors, but such is not of significance here because the joint and several obligation not to compete was dependent upon *all* stockholders signing the agreement. Manifestly, the intention of the parties to the instant contract is shown by its terms not to be binding on any one of them unless all stockholders signed it, and the court did not err in granting summary judgment as to National's Count VII.

One ground of the motion for summary judgment which was sustained by the trial court was that plaintiff was not the real party in interest and that there were other indispensable parties. It does not irrefutably appear either from the pleadings or any facts adduced that National is not the real party in interest, or that there exists other indispensable parties. If such be the case, on remand defendants may move to drop or add parties under Civil Rule 52.06, V.A.M.R., if a hearing and determination thereof will not delay the trial.

■ Defendants ·filed a two count counterclaim against National. Count I was for injunctive relief, and Count II was for $65,000 actual and $150,000 punitive damages, and both counts were based upon the theory of malicious abuse of process by National in bringing suits in Missouri and Nebraska based upon substantially the same allegations made by National here. Defendants complain that the court erred in denying their motion for summary judgment on the counterclaim based upon Noe's affidavit to the effect that James C. Craig admitted that the purpose of filing the other suits in Missouri and Nebraska was to cause defendants to expend great attorney fees to defend the suits. The contention is disposed of by the case of Hoevelman v. Reorganized School Dist. R2 of Crawford County, Mo.App., 430 S.W.2d 753, 754, holding that an appeal does not lie from an order denying a motion for summary judgment since such ordinarily decides only that the case should go to trial. However, the trial court did sustain National's motion to dismiss upon the ground that the counterclaim did not state a cause of action, and defendants appeal from that final judgment of dismissal.

Count I of the counterclaim for an injunction against National in pursuing suits in Missouri and other states alleges that the only purpose and intent of National in proceeding in three separate lawsuits against defendants is to vex and harass them and to force them to spend exorbitant sums in defending the suits which have no foundation in fact. Count II, for damages, incorporates the allegations of Count I and

alleges that National has caused process to be issued in this suit and others in Missouri, Nebraska and Arkansas for an illegal, perverted, abusive and malicious purpose other than for the purpose of collecting a judgment of damages, and were for these collateral true purposes: to harass defendants by a multiplicity of litigation and drive them out of business; to force United's agents or representatives to cease employment with it and to re-enter National's employment or one of its affiliates; to coerce those performing services (independent contractors and salesmen) to cease doing so for United, and to commence such services for National or one of its affiliates; to interfere with United's customer relationships, to prolong litigation and to financially bankrupt defendants, to destroy competition and to interfere with contractual relationships between United and its customers, its officers, agents, employees and independent contractors; to interfere with United's right to engage in its business in Arkansas and to engage in competition with National in a lawful manner; and to prevent defendants from being able to engage in United's business, or making a living through such business; all of which acts were alleged to be collateral and were ulterior motives.

In 1 Am.Jur.2d Abuse of Process, § 1, p. 250, the definition is stated: "Abuse of legal process consists in the malicious misuse or misapplication of that process to accomplish some purpose not warranted or commanded by the writ. In brief, it is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained." At p. 252, § 4 of the same volume, the elements to sustain the action are said to be: "(1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process, and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. * * * Or stated another way, the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." See Annotation 80 A.L.R. 582; and also 72 C.J.S. Process § 120, p. 1189; and White v. Scarritt, 341 Mo. 1004, 111 S.W.2d 18, where defendants used the threat of continuing a taxpayer's suit to compel plaintiff and other landowners to pay defendants a fixed proportion of sales prices to get the suit dismissed before options for a courthouse site expired. In commenting on the White case, the court in Moffett v. Commerce Trust Company, Mo., 283 S.W.2d 591, 600, said, "Of course, the defendants had the right as taxpayers to bring such a suit but it acted wrongfully in using the suit for the purpose of extorting money from the property owners, which they did not owe and could not have legally been compelled to pay."

Under the above set forth allegations of ultimate facts, which must be treated as true for the purposes of considering the propriety of the motion to dismiss the counterclaim, National's other suits were brought for ulterior motives, and for collateral purposes other than for recovery of judgments. The counterclaim stated claims to relief, and the court erred in dismissing the same.

The judgments on Counts IV, V and VII of National's second amended petition are affirmed. The judgments on Counts I and VI are reversed, as is the judgment of dismissal on Counts I and II of defendants' counterclaim, and the case is remanded for further proceedings.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.