R. ROWLAND & CO., INCORPORATED, Plaintiff-Respondent,

v.

David SMITH, et al., Defendants,

David Lawson and Angela Lawson, Defendants-Appellants.

No. 13898.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 23, 1985.

Bob J. Keeter, Keeter, Karchmer, Nelms, Kirby & Johnson, Springfield, for defendants-appellants.

Richard J. Pautler, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, and Donald R. Duncan, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for plaintiff-respondent.

CROW, Judge.

This is an appeal from an order granting a motion to dismiss a counterclaim for failure to state a claim upon which relief can be granted. The trial court designated the order final for purpose of appeal per Rule 81.06, Missouri Rules of Civil Procedure (15th ed.1984).

R. Rowland & Co., Incorporated ("Rowland") filed a multicount petition naming 11 individuals and a corporation as defendants. David Lawson ("David") and Angela Lawson ("Angela") are two of the individual defendants. The corporate defendant is Blind Hog, Inc. ("Hog").

Count VI of Rowland's petition—the only count pertinent to this appeal—alleges that on December 1, 1980, Hog entered into a "Commodity Customer Agreement" with Rowland, establishing an account for purchasing and selling commodity futures contracts. Count VI further alleges that during the period from December 2, 1980, through December 12, 1980, Hog placed orders with Rowland for the purchase and sale of such contracts. Those transactions, according to Count VI, resulted in a "debit balance" of $126,889.50 in Hog's account as of December 12, 1980. Count VI goes on to state that Hog "forfeited its corporate charter" on January 1, 1982, and that the entire debit balance remains unpaid despite demand by Rowland.

Count VI avers that David was an officer, director and shareholder of Hog prior to January 1, 1982, and since that date he has been a statutory trustee of Hog. Angela, according to Count VI, was a director of Hog prior to January 1, 1982, and since that date she has been a statutory trustee of Hog.

Count VI pleads that Hog was established by David, Angela, and two of the other individual defendants "for the sole and exclusive purpose of conducting [their] personal commodity futures trading strategies." Hog, according to Count VI, "had insufficient capital structure to accomplish its purpose of investing in commodity futures trading transactions" and "totally disregarded corporate formalities with respect to record keeping and the conduct of its business." Consequently, states Count VI, Hog "was a mere alter ego" of David, Angela, and the other two individual defendants named in Count VI. Therefore, alleges Count VI, Rowland is entitled to recover from Hog, David, Angela, and the two other individual defendants identified therein, "jointly and severally," the debit balance of $126,889.50, together with interest thereon.

Contemporaneously with their separate answers to Rowland's petition, David and Angela each filed a counterclaim against Rowland for malicious prosecution. Rowland moved that the counterclaims be dismissed for failure to state a cause of action in that the counterclaims failed to allege that Rowland's claim against the Lawsons had been terminated in the Lawsons' favor. The trial court granted Rowland's motion and no appeal was taken from that ruling. The Lawsons, however, were given leave to file an amended counterclaim, and did so.

The Lawsons' amended counterclaim alleges that the issuance of process triggered by Rowland's petition "was willful, illegal, improper and a perverted use of process to accomplish a result outside its lawful scope." The process, according to the amended counterclaim, "was used to attempt to coerce and extort the [Lawsons] to pay or settle an account which they did not individually owe upon the alleged theory of piercing the corporate veil." The amended counterclaim avers that the Lawsons "have suffered injury to their person, property and reputation as a result of such misuse of process." The amended counterclaim prays for actual and punitive damages.

Rowland moved the trial court to dismiss the amended counterclaim, arguing that it failed to allege that Rowland's petition or

the use of process "was for any purpose other than to compel [the Lawsons] to pay the debt set forth in the Petition." Consequently, asserted Rowland, the amended counterclaim failed "to set forth a cause of action under Missouri law."

The trial court entered an order granting Rowland's motion. The Lawsons appeal from that order. Their sole assignment of error states:

"The trial court erred in sustaining the motion to dismiss the amended counterclaim for failure to state a cause of action because the allegations are sufficient to state a cause of action for abuse of process."

*Stafford v. Muster,* 582 S.W.2d 670, 678[13] (Mo. banc 1979), citing *National Motor Club of Missouri, Inc. v. Noe,* 475 S.W.2d 16, 24 (Mo.1972), holds that a pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the party who caused the process to issue made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) such party had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted. *Stafford* explains that the phrase "use of process" appearing in element "(1)" refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. 582 S.W.2d at 678[14].

*National Motor Club,* 475 S.W.2d at 24, states that the test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

An oft-cited example is *White v. Scarritt,* 341 Mo. 1004, 111 S.W.2d 18 (1937). There, a land company, by its president-at-torney, brought suit to enjoin the sale of bonds to provide money for a new court-house and jail. The site had been selected

and options to purchase had been taken from the owners of the tracts constituting the site. One of those tracts was owned by White and was occupied by tenants. White's tract was heavily encumbered and the rent was White's only source of funds to pay interest, taxes and other expenses. White's tenants, thinking the tract was sold, vacated it, leaving White without income. As a result, White became delinquent on taxes and interest, and was threatened with foreclosure. A demurrer to the land company's petition to enjoin the bond sale was sustained, but the land company, acting through its president, demanded that White and the other property owners pay the land company a specified sum, otherwise the land company would appeal, thereby preventing the sale of the various tracts within the time provided in the options. Because of White's financial straits, she paid the sum demanded of her, but she subsequently sued the land company and its president and obtained judgment for money damages. In affirming the judgment the Supreme Court of Missouri pointed out that a taxpayer may seek relief from taxes believed unlawful, and may do so even though his private or personal interest may be benefited or the private or personal interests of another may be injured by the institution and prosecution of a suit for relief. *Id.* at 22[5]. However, the privilege may not be used for an unlawful purpose such as extorting money from another. *Id.* The opinion emphasized that the land company had no claim against White. There had been no business relation between them, and White paid no money to the land company under threatened or pending litigation against her. *Id.* at 22.

In *Moffett v. Commerce Trust Co.,* 283 S.W.2d 591, 600 (Mo.1955), the Supreme Court of Missouri, commenting on *White,* explained that although the land company had the right as a taxpayer to bring its suit, the land company and its president acted wrongfully in using the suit for the purpose of extorting money from the property owners, which they did not owe and

could not have legally been compelled to pay.

In the instant case, the "process" on which the Lawsons base their amended counterclaim is the summons which was issued to them when Rowland filed its petition.

A summons is a means of bringing a defendant into court so that the court acquires jurisdiction of his person. *State ex rel. Ballew v. Hawkins*, 361 S.W.2d 852, 857 (Mo.App.1962).

We find no allegation of fact in the Lawsons' amended counterclaim indicating that Rowland made any use of the summons other than to bring the Lawsons under the jurisdiction of the trial court for an adjudication of the claim asserted against them by Rowland. True, the Lawsons' amended counterclaim alleges that the summons was used to attempt to coerce them to pay or settle an account they do not owe, but the amended counterclaim fails to explain *how* the summons was used for such purpose. We espy no allegation in the amended counterclaim that the summons did anything except bring the Lawsons into court to face Rowland's claim. That, as just explained, is the function of a summons. No cause of action for abuse of process arises where the process is employed to perform a function intended by law; there must be a use which is beyond the scope of the process, and therefore improper. *Barnard v. Barnard*, 568 S.W.2d 567, 571 [15] (Mo.App.1978).

Perhaps recognizing that their amended counterclaim contains no allegation of fact indicating the summons itself was misused, the Lawsons appear to be asserting a slightly different theory on appeal than the one articulated in the amended counterclaim.

The argument portion of the Lawsons' brief avers that Rowland is using the "suit" as a means of attempting to coerce the Lawsons to pay Hog's debt. The Lawsons explain: "In other words, it is that which is occurring after formal issuance of process and during settlement negotiations

that constitutes the tort." They add: "The collateral thing that [Rowland] is attempting to do in settlement negotiations is not to compel [the Lawsons] to pay a debt they owe but to compel [them] to pay a debt the corporation, Blind Hog, Inc., allegedly owes."

The only Missouri case relied on by the Lawsons in support of their contention that the amended counterclaim states a cause of action for abuse of process is *Wells v. Orthwein*, 670 S.W.2d 529 (Mo.App.1984). For the reasons that follow, we are unconvinced that *Wells* supports the Lawsons' position.

*Wells* points out the difference between an action for malicious prosecution and one for abuse of process:

"It has been said that some confusion exists as to the nature and essentials of actions for abuse of process; that much of the confusion has resulted from a want of consistency and accuracy in distinguishing between the act of maliciously procuring the issuance of process and the act of abusing process when issued. Where the matter complained of concerns the *issuance* of process, the action is either strictly or by analogy one for *malicious prosecution.* The gist of an action for *abuse of process* is the improper *use* of process after it has been issued." *Id.* at 532[3]. [Emphasis added.)

*Wells* then carefully explains that an action for abuse of process will lie if a suit is wrongfully brought for a *collateral* purpose:

"If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim. However, if the suit is brought for a collateral purpose, there is abuse of process. [Citation omitted.]

"The law in Missouri is well settled. To sustain an action for abuse of process the facts must demonstrate an illegal and improper use of such process that is

not warranted or authorized, an ulterior motive in exercising such process, and damages. [Citation omitted.]

"The test employed is whether the process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled to do legally. Or, stated somewhat differently, the privilege of process may not be used for an unlawful purpose such as using the litigation to extract money or anything of value from another." *Id.* at 532.

The Lawsons seize upon the last sentence quoted above, insisting that Rowland is using the suit to extract money from them to satisfy Hog's debt.

The Lawsons' reliance on that sentence is misplaced. The entire excerpt from *Wells,* studied in context, makes it plain that no abuse of process occurs in the bringing of a lawsuit if the suit is confined to its regular and legitimate function of pursuing the cause of action pleaded in the petition; it is where the suit is brought for a collateral purpose that there is abuse of process.

■ Here, Count VI of Rowland's petition pleads that the Lawsons, along with Hog, are indebted to Rowland. Rowland is pursuing the cause of action pleaded against the Lawsons in that count. Unlike *White,* 111 S.W.2d 18, the instant case is not one where Rowland is using a suit to which the Lawsons are not parties to extort money from them.

Whether the Lawsons are indeed liable to Rowland on the theory pleaded by Rowland in Count VI of its petition remains to be adjudicated. If the Lawsons are ultimately exonerated from liability to Rowland, and if they believe that Rowland sued them maliciously and without probable cause and that they were damaged, they may pursue a claim against Rowland for malicious prosecution. *Stafford,* 582 S.W.2d at 675[1]. They have not, however, pleaded facts in their amended counterclaim sufficient to state a cause of action against Rowland for abuse of process.

The trial court's order dismissing the Lawsons' amended counterclaim is affirmed.

HOGAN, P.J., and MAUS, J., concur.

PREWITT, C.J., recused.