

# SUPREME COURT OF MISSOURI
## en banc

Bruce S. Schlafly, )
)
        Appellant, )
)
v. )      No. SC99358
)
Anne S. Cori, )
)
        Respondent. )

*Opinion issued July 26, 2022*

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
### The Honorable Nancy Watkins McLaughlin, Judge

Bruce S. Schlafly ("Son") and Anne S. Cori ("Daughter") are children of Phyllis Schlafly ("Mother") and beneficiaries of the Phyllis Schlafly Revocable Trust (the "Trust"). In February 2020, Son filed the instant action, alleging Daughter engaged in an abuse of process by filing a suit to invalidate portions of the Trust.[1] The circuit court dismissed his petition with prejudice for failure to state a claim upon which relief could be granted. He appeals the judgment. Under the deferential standard of review applied

---

[1] In response to the initial petition, Daughter filed a motion to dismiss or, alternatively, for a more definite statement. After additional briefing and a hearing, the circuit court sustained the motion to dismiss and held Son could file an amended petition within 30 days. Once Son filed an amended petition, Daughter again filed a motion to dismiss or, alternatively, for a more definite statement. Additional briefing occurred, and a hearing was held. The circuit court then sustained the motion to dismiss. Son filed a motion requesting, in part, leave to file an amended petition. Despite Daughter's objection, the circuit court granted leave. Subsequently, Son filed a second amended petition, the averments in which are the subject of this appeal.

when adjudicating motions to dismiss, the petition contains sufficient allegations regarding the elements of an abuse of process claim. Consequently, the judgment is reversed, and the case is remanded.

## Background

As relevant here, Son's second amended petition contained the following disputed allegations:[2] Mother, who was a well-known political activist, created Eagle Forum and two relevant funds (collectively, "Eagle Entities"). Eagle Entities raised significant sums of money, largely due to Mother's success. Son, a physician with his own practice, became a director of one of the related funds in 2014 and would become a trustee of the other after Mother's death. Daughter has been a director of Eagle Forum and one of the related funds for several years. She hoped to become the leader of Eagle Entities upon Mother's death.

In 2015, Mother, Son, and others declined to appoint Daughter as the president of Eagle Forum, instead selecting another individual. Daughter, with the help of five other directors, then attempted to take control of Eagle Entities. Mother later asked Daughter and her supporters to resign, but her request was ignored. Daughter and others took control of Eagle Forum's assets in 2016 via an illegal board meeting. When Mother and others refused to acknowledge her control, Daughter filed a lawsuit to enforce the results of the board meeting.

---

[2] This Court does not opine on the validity of these allegations; rather, it merely restates Son's contentions.

2

After Mother was ousted, she founded a new organization, Phyllis Schlafly American Eagles, to engage in political advocacy. Daughter saw the new organization as a competitor to Eagle Forum. Son alleged she explored claiming that Mother lacked capacity and was unduly influenced by Son. She sent cease-and-desist letters to many individuals, including Son and Mother, threatening to assert certain claims against them and initiate investigation by law enforcement. Daughter suggested to others Son had unduly influenced Mother and hired a consultant to publish her allegations and positions. After she filed a lawsuit alleging the new organization was unfairly competing with Eagle Forum, she continued to explore using incapacity and undue influence claims to achieve her goals.

Before Mother died in September 2016, she amended the Trust, reducing Daughter's interest by the cost of defending her lawsuits. After Mother's death, Son became a trustee of the second related fund. In March 2017, Daughter filed a third lawsuit, seeking, in part, to void the Trust amendments due to incapacity and undue influence (the "Trust Suit").[3] In the Trust Suit, she engaged in extensive discovery, sought the appointment of a special fiduciary or master, and took other actions to increase costs. In February 2020, after spending large sums to litigate the action, Daughter voluntarily dismissed the Trust Suit with prejudice. Son incurred a significant amount of litigation expenses while defending the Trust Suit and Daughter's other cases.

---

[3] Later, Daughter amended the prior suit seeking to enforce the board meeting in which she allegedly obtained control of Eagle Forum's assets, claiming Son participated in a conspiracy against her.

Son alleged Daughter's legal actions, including initiation of the Trust Suit, were partially motivated by animosity towards Son and other relatives. Among other things, she sought to force Son to resign from the related entities, grant control and use of fund property to her, halt his involvement with the new organization and other political operations, cede his inheritance, require him to expend large sums on litigation, extract items of value from him, and hinder his medical practice. Daughter also hoped to create media coverage regarding her claims, curry public favor, legitimize her standing regarding Eagle Forum, improve her bid to take over Eagle Entities and its assets, obtain advantages and force favorable outcomes in other litigation, harass Son, and reduce Trust assets.

Rather than using the Trust Suit to invalidate the Trust amendments, try her claims, or obtain a judgment, Daughter sought various unlawful, collateral ends and attempted to force Son to act in a manner in which he could not be legally compelled. As such, she engaged in willful, definite acts constituting an illegal, improper, perverted, and unauthorized use of process. Further, Daughter acted with the improper purpose of pursuing these collateral ends. Son sustained damages, as he was forced to expend more than $100,000 defending the Trust Suit, his interest in the Trust was diminished, and he suffered physical and emotional distress.

Once Son filed his second amended petition, Daughter filed a motion to dismiss the petition with prejudice. She argued—much like in prior filings, which were incorporated into the motion—the petition failed to allege how Daughter used the Trust Suit to achieve unlawful, collateral purposes. Son filed suggestions in opposition,

4

Daughter replied, a hearing occurred, and the circuit court sustained the motion to dismiss, finding:

> [Son] has failed to state a claim for abuse of process. [He] makes only conclusory allegations that [Daughter] used the Trust Suit to accomplish numerous collateral ends, such as coercion and harassment. [Son] does not, however, allege facts demonstrating a willful, definite act taken by [Daughter] that was aimed at those unlawful collateral ends. Thus, [he] has not alleged facts to establish the first element of abuse of process . . . .[4]

Son appeals.[5]

## Standard of Review

The circuit court's decision to sustain a motion to dismiss is reviewed *de novo*. *R.M.A. ex rel. Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019). "When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id.* (internal quotation omitted). A reviewing court does not assess the credibility or persuasiveness of allegations; rather, it ascertains whether pleaded facts meet the elements of a claim. *Id.* Although Missouri is a fact-pleading state, only ultimate facts, "those the jury must find to return a verdict for the plaintiff[,]" must be asserted; evidentiary facts are not necessary. *Id.* at 425. "Mere conclusions of the pleader not supported by factual allegations are disregarded in determining whether a

[4] The judgment, which once stated Daughter was the plaintiff, was corrected by a *nunc pro tunc* order.
[5] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

petition states a claim on which relief can be granted." *Com. Bank of St. Louis Cnty. v. James*, 658 S.W.2d 17, 22 (Mo. banc 1983).

## Analysis

Son contends the circuit court erroneously dismissed his petition because he adequately alleged the elements of abuse of process. Over the last 50 years, this Court has addressed only a handful of cases squarely presenting issues regarding abuse of process claims.[6] To establish an abuse of process, one must show "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Clayton Terrace*, 585 S.W.3d at 277 (internal quotation omitted). Only the first element— improper use—is at issue here.

Use of process has been defined as "some wil[l]ful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process." *Ritterbusch*, 789 S.W.2d at 493 (internal quotation omitted). The relevant question is "whether process ha[s] been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he [or she] could not be compelled to do legally." *Clayton Terrace*, 585 S.W.3d at 278 (second alternation in

---

[6] *See, e.g.*, *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277-79 (Mo. banc 2019); *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 188-89 (Mo. banc 2015); *Ritterbusch v. Holt*, 789 S.W.2d 491, 493-94 (Mo. banc 1990); *Stafford v. Muster*, 582 S.W.2d 670, 678-79 (Mo. banc 1979); *Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 24 (Mo. banc 1972).

original) (internal quotation omitted). An improper use cannot be inferred from an improper purpose. *Id.* Importantly, an abuse of process occurs "when a party employs legal process in a manner technically correct, but for a wrongful and malicious purpose to attain an unjustifiable end or an object that the particular process is not meant to effectuate." *Id.* (internal quotation omitted). But if one simply pursues an action to its authorized conclusion, an abuse of process does not occur, regardless of evil motive. *Id.* Accordingly, liability arises in rare cases in which the allegedly improper action was instituted "to obtain a result which the process was not intended by law to effect." *Id.* (internal quotation omitted).

Son sufficiently alleged an improper use of process. His second amended petition avers Daughter instituted the Trust Suit to achieve unlawful ends, to compel Son to act in a manner in which he could not be legally compelled, and to obtain results outside of the scope of process. Pursuant to section 456.6-604.1,[7] an individual may contest the validity of a revocable trust. Son, though, alleged Daughter used the Trust Suit not to adjudicate the validity of the Trust amendments, but for improper ulterior motives, such as gaining an advantage in other litigation, extorting items of value, improving her standing for claims regarding control of Eagle Entities, silencing Son, pressuring him regarding his positions with the two related funds, harassing him, and hindering his medical license. Son also asserted Daughter utilized improper litigation tactics, such as engaging in extensive discovery and seeking the appointment of a special fiduciary or master, all to

---

[7] All statutory references are to RSMo 2016.

increase costs. Under the standard of review applied when adjudicating motions to dismiss, these properly pleaded facts must be treated as true. *R.M.A.*, 568 S.W.3d at 424.

Daughter posits these allegations merely assert an unlawful purpose, rather than a willful, definite act not authorized by the process or in pursuit of an illegitimate objective. Admittedly, the distinction between improper use and improper purpose may be difficult to comprehend, and many of Son's allegations address both elements. But Son did not simply allege an improper purpose. His second amended petition stated Daughter was not interested in using the Trust Suit for its appropriate purpose; instead, he alleged she made an improper use by pursuing ends that fall outside the scope of the action. Because Son alleged Daughter used the Trust Suit in an illegal, improper, or perverted manner that was not warranted or allowed by the process, he adequately pleaded the first element of an abuse of process claim.

Daughter contends that, to state a valid claim for abuse of process, a petition must state particularly how process was misused. She argues a plaintiff must allege more than filing and litigating a lawsuit, stating a definite act in furtherance of a collateral purpose—such as an improper demand, an admission the suit was used for an impermissible purpose, a request for inappropriate relief, or some other specific evidence—is necessary. Daughter posits similar allegations or evidence were present in prior cases. *See, e.g.*, *Ritterbusch*, 789 S.W.2d at 492 (explaining the petition alleged the defendant offered to withdraw a criminal complaint if a collateral claim was paid); *Stafford*, 582 S.W.2d at 676 (stating the petition alleged the defendants, after initial inquiries confirmed a lack of knowledge about certain subjects, continued questioning the

8

plaintiff and subjected her to another round of inquiry beyond the permissible scope of the process); *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 319-21 (Mo. App. 2010) (finding summary judgment against the plaintiffs was inappropriate because the record, which included specific statements from an officer of the defendant corporation, implied a defamation action may have been instituted for the collateral purpose of silencing an individual); *Owen v. Owen*, 642 S.W.2d 410, 414 (Mo. App. 1982) (explaining evidence indicated an individual offered to dismiss his lawsuit if certain demands were met).

These arguments are unpersuasive. While some prior cases include specific facts and evidence as to how process was misused, Daughter does not cite authority establishing such material is required to advance an abuse of process claim.[8] The test for

---

[8] Daughter relies heavily on *R. Rowland & Co. v. Smith*, 698 S.W.2d 48 (Mo. App. 1985). There, R. Rowland & Company, through a suit against another corporation and multiple individuals, including the Lawsons, sought payment for prior transactions. *Id.* at 49. The Lawsons filed a counterclaim for abuse of process, arguing the issuance of process triggered by the petition was used to force payment of a debt they did not owe individually. *Id.* The circuit court found the petition failed to state a claim upon which relief could be granted. *Id.* at 49-50. On appeal, the Lawsons argued they sufficiently pleaded an abuse of process. *Id.* at 50. The appellate court stated "the Lawsons' amended counterclaim alleges that the summons was used to attempt to coerce them to pay or settle an account they do not owe, but the amended counterclaim fails to explain *how* the summons was used for such purpose." *Id.* at 51 (emphasis in original). It noted an abuse of process occurs when a suit is levied for a collateral purpose, not its regular and legitimate function. *Id.* at 52. The court of appeals explained R. Rowland & Company, which claimed the Lawsons owed the debt in its petition, simply pursued the pleaded cause of action. *Id.* The dismissal of the counterclaim was affirmed. *Id.*

*R. Rowland* does not establish more specific allegations are required here, as the factual contexts differ significantly. In that case, the Lawsons alleged R. Rowland & Company engaged in an abuse of process by pursuing a questionable claim to force payment of a debt, which was the subject of the lawsuit, they did not owe. The action and the unlawful purpose were inextricably linked, and the possibility that R. Rowland & Company was using the cause of action for its regular and legitimate function was more likely. In those circumstances, requiring more specific allegations was sensible.

Yet here, the cause of action and the illegitimate ends are wholly disconnected. If, as Son contends, Daughter used the Trust Suit to pursue improper goals, the cause of action was

9

improper use of process is whether a plaintiff has alleged, and can later establish, a willful, definite act for unauthorized purposes or to achieve illegitimate objectives. The second amended petition, as explained above, does so. Notably, multiple cases demonstrate an abuse of process may occur when a litigant 1) files suit for an improper purpose *see, e.g.*, *Ritterbusch*, 789 S.W.2d at 493-94 (causing criminal charges to be filed to force payment of a collateral claim); *Diehl*, 309 S.W.3d at 319-21 (filing an action to silence an individual, rather than obtain remuneration for defamation); *Owen*, 642 S.W.2d at 413-15 (offering to dismiss a lawsuit under certain terms, which showed the suit was initiated to coerce acceptance of the demands), or 2) engages in improper litigation tactics to achieve collateral ends. *See, e.g.*, *Stafford*, 582 S.W.2d at 678-79 (using a writ to interrogate another beyond the scope of inquiry permitted by an applicable rule); *Noe*, 475 S.W.2d at 23-24 (filing multiple, duplicative suits for purposes, such as harassment and driving others out of business); *Lambert v. Warner*, 379 S.W.3d 849, 857-58 (Mo. App. 2012) (instituting actions in an improper venue to increase costs and harass a party).

To the extent Daughter contends Son's allegations are conclusory and must be disregarded because his second amended petition does not contain more specific facts (e.g., an admission the suit was instituted for an improper purpose or a request for improper relief), her argument is unfounded. Such direct evidence typically is not necessary, *see Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011) (noting,

_____

misused. As a result, the allegations in the second amended petition were sufficient, and Son was not required to plead more specific facts.

10

in the context of determining whether a submissible case existed, "[t]he plaintiff may prove essential facts by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred" (internal quotation omitted)), and is likely available only in rare cases. Moreover, to survive a motion to dismiss, one need only plead facts a jury must find to award relief, not evidentiary facts. *R.M.A.*, 568 S.W.3d at 425. If a jury accepts Son's allegations, an improper use can be established. The second amended petition states a claim upon which relief can be granted.

Daughter offers various reasons why Son cannot establish a misuse of process: the Trust Suit properly attempted to set aside the Trust amendments, which was permissible, *see* section 456.6-604; Son, as a child of Mother and a beneficiary of the Trust, was a necessary party, *see Betty G. Weldon Revocable Tr. ex rel. Vivion v. Weldon ex rel. Weldon*, 231 S.W.3d 158, 168 (Mo. App. 2007); and the Trust Suit, which was voluntarily dismissed with prejudice based on the settlement of a different claim, was simply pursued to its authorized conclusion. But these arguments—which generally seek to establish the Trust Suit was proper—ignore the standard of review applicable at this stage of the proceeding. The second amended petition specifically asserts Daughter used the Trust Suit to pursue various improper ends, not to challenge the validity of the Trust amendments. These properly pleaded allegations must be accepted as true for purposes of resolving a motion to dismiss. *R.M.A.*, 568 S.W.3d at 424. Any contrary allegations by Daughter as to the propriety of the Trust Suit cannot be accepted at this stage.

11

Daughter analogizes to *Clayton Terrace*. There, subdivision trustees filed an action to set aside a real estate sale for failure to comply with indentures. *Clayton Terrace*, 585 S.W.3d at 275. The property owner filed a counterclaim for abuse of process. *Id.* After a bench trial, the circuit court granted relief, holding the trustees used the suit to coerce the homeowner to withdraw a request to subdivide the property and to hinder title. *Id.* at 275-76. This Court reversed and held "[t]he facts presented . . . d[id] not show the use of a legal claim to accomplish some end not envisioned by the legal process used[,]" noting the trustees had a right to enforce the indentures, the seller was the only possible defendant, and seeking to establish the sale was void or voidable was a proper purpose for the action. *Id.* at 278-79. It explained that the circuit court, by relying on admissions that the trustees instituted the action only because they disliked the proposed use of the property, improperly inferred an improper use from an improper purpose. *Id.* at 279. Similarly, Daughter argues she did not use the Trust Suit to pursue an unauthorized end.

*Clayton Terrace* is distinguishable. First, it reached this Court on appeal from a judgment after a bench trial, not a motion to dismiss. Evidence had been presented, the case had been fully adjudicated, and a different standard of review applied. *Id.* at 275-76. Second, the facts are distinct. In *Clayton Terrace*, the allegedly unlawful purpose— preventing subdivision of the property—could be properly accomplished by the action. If the sale was set aside, the homeowner, who no longer had a right to the property, could not proceed with the subdivision. Improper use could not be established, even if the trustees acted with the above improper motive.

12

Here, however, the purported improper uses are completely distinct from the appropriate goal of the cause of action. Son avers in his second amended petition that Daughter misused the Trust Suit to achieve improper ends, not that she instituted a proper suit with improper motivations. Again, these contentions were sufficient to survive a motion to dismiss. Whether Son can prove his allegations is not the issue before this Court at this stage of litigation.

**Conclusion**

Because Son, under the deferential standard of review applied when adjudicating motions to dismiss, alleged sufficient facts to support the elements of an abuse of process claim, the circuit court's dismissal was erroneous.[9] Accordingly, the judgment is reversed, and the case is remanded.

_____
Mary R. Russell, Judge

All concur.

---

[9] This Court notes actions alleging an abuse of process do not provide the exclusive remedy for parties engaging in poor behavior during litigation. Instead, measures may be available in the initial action. *See* Rule 55.03(d) (discussing sanctions in the context of improper pleadings); Rule 56.01(c) (providing for protective orders to prevent unwarranted discovery); Rule 61.01 (addressing possible sanctions for inappropriate discovery).